UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WALTER J. POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-30004-MGM |
| | ) | |
| COMMONWEALTH OF | ) | |
| MASSACHUSETTS, et al., | ) | |
| Defendants. | ) | |
| | ) | |

REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 17, 31, 64, 66, and 74)

ROBERTSON, U.S.M.J.

## I.    Introduction

Currently before the court are the separate motions of the defendants P. Keyburn Hollister (Dkt. No. 17), Anthony Patella (Dkt. No. 31), Kenneth W. Luke and Francis B. Marinaro (Dkt. No. 64), Lisa M. McCormack, Clement A. Ferris, and Howard V. Neff, III (Dkt. No. 66), and Timothy J. Shugrue (Dkt. No. 74) to dismiss all five counts of *pro se* Plaintiff Walter J. Powell's ("Plaintiff") operative complaint (Dkt. No. 50).  The district judge referred the motions to the undersigned for report and recommendation (Dkt. Nos. 41, 73, 77).  Plaintiff filed a timely opposition to defendant Hollister's motion (Dkt. No. 28), but has not filed an opposition to any of the other motions, and the time for doing so has elapsed.  On May 17, 2016, the court heard defendants Hollister and Patella in support of their respective motions and Plaintiff in opposition (Dkt. No. 46).  The remaining motions are being decided on the papers.  For the reasons set forth below, the court recommends that all five of the motions to dismiss be GRANTED and that Plaintiff's complaint be DISMISSED as to all counts against all defendants.

## II.      Plaintiff's Complaint

### A.  Alleged Facts

Plaintiff is a 63 year-old black and Native American male (Dkt. No. 50 at ¶ 1).  On or about December 2, 2014, Plaintiff's then-wife, Sabrina Powell ("Ms. Powell"), filed a complaint for divorce along with an affidavit of indigency in the Berkshire County Probate and Family Court ("the Court") in Pittsfield, Massachusetts (*id*. at ¶¶ 10-11, 35).  Plaintiff alleges that defendant Francis B. Marinaro, the Court Registrar, "approved" Ms. Powell's affidavit (*id*. at ¶¶ 5, 11).  According to Plaintiff, Ms. Powell had tax-free income of $6,000 per month, or $72,000 per year, and was not indigent (*id*. at ¶ 11).

On March 30, 2015, defendant P. Keyburn Hollister, who had entered an appearance as Ms. Powell's counsel in the divorce proceedings, filed a motion for temporary orders ("the Motion") relating to child support and custody arrangements for Plaintiff and Ms. Powell's teenaged daughter pending final judgment (*id*. at ¶¶ 7, 11, 13).  According to Plaintiff, defendant Hollister made statements in the Motion that were fabricated, fraudulent, and "clearly defied logic" (*id*. at ¶¶ 11, 14).  The Court Clerk's office accepted the Motion and scheduled it for hearing on April 6, 2015 (*id*. at ¶¶ 13-14).[1]

The hearing took place as scheduled before Justice David J. Dacyczyn ("Judge Dacyczyn" or "the Judge"), the judge who had been assigned the case (*id*. at ¶¶ 10, 13-14).[2]

---

[1] Plaintiff does not identify who in the Clerk's office allegedly accepted or scheduled the Motion (*id*. at ¶ 13).

[2] Plaintiff named Judge Dacyczyn and the Commonwealth of Massachusetts as defendants in his original complaint, and both parties joined in Patella's motion to dismiss (Dkt. Nos. 1, 31).  Thereafter, Plaintiff sought and obtained leave to file the operative complaint, which omits Judge Dacyczyn and the Commonwealth as defendants, while adding defendants Luke, Marinaro, McCormack, Ferris, Neff, and Shugrue (Dkt. Nos. 30, 47, 50).  Plaintiff posits in his motion for leave to amend that, because "co-conspirator, Judge Dacyczyn has absolute immunity," it is "necessary so that justice may be partially served," that Plaintiff "add[] the remaining co-

Defendant Hollister served the Motion on Plaintiff that morning, and Judge Dacyczyn granted it the following day (*id.* at ¶¶ 13, 15, 17).  The Judge's order ("the Order") stated that "[i]n lieu of child support and in recognition of the parties' joint parenting arrangement, [Plaintiff] shall continue to pay the mortgage, taxes, insurance and utilities associated with the former marital residence …." (*id.* at ¶ 15).  Plaintiff alleges that this figure equaled approximately $1,600 per month (*id.* at ¶¶ 14-15).  In addition, Judge Dacyczyn ordered that Plaintiff and Ms. Powell's daughter spend alternating nights with each parent (*id.* at ¶ 15).

The crux of Plaintiff's complaint is that defendant Hollister filed the Motion, the Clerk's Office "accepted the prohibited Motion and unlawfully scheduled" it for a hearing, and Judge Dacyczyn heard and granted it, all in violation of Probate and Family Court Standing Order 2-99 ("Standing Order"), which Plaintiff interprets as having conferred upon him a "mandated, constitutionally protected 10 days to respond" to the Motion before it was ruled on (*id.* at ¶ 13).[3] According to Plaintiff, when defendant Hollister filed the Motion on March 30, 2015, she falsely back-dated the certificate of service to March 24 (or 25), 2015, and the Clerk's office knew of and allowed defendant Hollister to file the back-dated certificate of service and scheduled the

---

conspirators in this matter, who have intentionally violated Plaintiff's constitutional Rights and don't have immunity" (Dkt. No. 30 at p. 1).

[3] By its terms, the Standing Order is applicable only to "the following post-hearing motions:

    i)        to Amend Findings of Fact (Rule 52)
    ii)      to Amend Conclusions of Law of (Rule 52)
    iii)    for New Trial (Rule 59)
    iv)    to Amend Judgments (Rule 59(e))
    v)    for Relief from Judgment and Order (Rule 60)."

The Standing Order requires parties seeking relief under any of the rules specified in subparagraphs i) through v) of the Standing Order to serve the motion on non-moving parties and to file the motion on the date of service or within five days after service.  Non-moving parties opposing or supporting the motion are permitted to file and serve an opposition within ten days after service, except by leave of court.  The Standing Order "does not create any substantive right to relief, other than as set forth [in sub-paragraphs i) through v)]."

Motion for a hearing only six days later.  This had the effect of making it appear as if Plaintiff had ten days to respond, when he did not (*id*. at ¶¶ 13, 31-1[4]).[5]  Plaintiff was unaware of the Standing Order on April 6, 2015, and he did not object to the Motion at the time on the basis of not having had ten days to respond (id. at ¶¶ 17, 29-2).  Plaintiff claims that because he did not have ten days to respond, his rights under the Due Process and Equal Protection Clauses of the United States Constitution were violated (*id*. at ¶ 15).  According to Plaintiff, "[i]f [he] had been afforded his mandated constitutionally protected 10 days to oppose the motion as Pursuant [sic] to the [Standing Order,] [he] would have and could have very easily disputed the concocted false statements made by Defendant Hollister, which appear to be the motivation behind [the] Judge …, Defendants McCormack, Ferris, Marinaro and … Patela's [sic] commitment and actual action to totally overlook the [Standing Order]" (*id*. at ¶ 14) (*see also id*. at ¶¶ 4-6, 9).  Plaintiff claims that Judge Dacyczyn's Order ruined his financial status and credit and left him struggling to pay his own bills (*id*. at ¶ 14).[6]

On April 30, 2015, Plaintiff filed his own motion for temporary orders and asked that it

---

[4] Plaintiff's complaint contains two sets of paragraphs bearing the numbers 29 through 32 (Dkt. No. 50, at pp. 17-23).  To clarify which of the duplicate numbers the court is citing, the first set of paragraphs will be designated with a "-1" following the number (e.g., "¶ 31-1"), and the second set with a "-2" following the number (e.g., "¶ 31-2").

[5] According to Plaintiff, this was not the only time the Clerk's office allowed Hollister to file a back-dated certificate of service.  Plaintiff alleges that on November 9, 2015, Hollister filed a motion to expedite a contempt complaint against Plaintiff with a back-dated certificate of service, which Patella accepted (*id*. at ¶ 36).  Plaintiff characterizes this practice as a "routine special privilege[]" accorded to her (*id*. at ¶ 17).

[6] Plaintiff also claims that the Order forced his daughter, who wanted to live only with Plaintiff, to "endure extreme unnecessary stress and anxiety," and "to live like a gypsy going house to house every other night," which Plaintiff characterizes as abuse and "cruel and unusual punishment" (*id*. at ¶¶ 15, 24).  Plaintiff does not, however, purport to name his daughter as a plaintiff or assert any claims on her behalf.  This is appropriate because a person who is not a member of the bar is permitted to appear and practice before the court only on his own behalf. *See Thibeault v. Brown*, No. 12-10333-PBS, 2012 WL 1865834, at *1 n.1 (D. Mass. May 21,

be heard on May 4, 2015, a date the Court had already set to hear another motion of Plaintiff's (*id*. at ¶¶ 16-17).  Plaintiff, however, was told by "the young lady" in the Clerk's office, "'you can't file that'!" (*id*. at ¶ 17).  Then, at the May 4, 2015 hearing, the Judge ordered that "'no action [would be] taken on the Plaintiff's <u>MOTION FOR TEMPORARY ORDERS,</u> FILED April 30, 2015, as it was not Submitted in accordance with Standing order 2-99'" (*id*. at ¶ 18).  According to Plaintiff, he was "completely stunned," having "just personally witnessed Judge Dacyczyn Discriminatorily [sic] enforce the Massachusetts Rules of Domestic Relations Procedure" (*id*.).  Specifically, one month earlier, the Judge had entertained and granted defendant Hollister's Motion despite its lack of compliance with the Standing Order, but the Judge was now refusing to hear Plaintiff's motion (*id*.).

Plaintiff alleges that, on June 2, 2015, he filed a pre-trial memorandum in which he brought the Standing Order violation to the Judge's attention, "clearly, systematically and methodically articulat[ing] the fact that Defendant Hollister, with the deliberate assistance of Judge Dacyczyn, Defendants McCormack, Marinaro, Ferris and Patela [sic] [had] intentionally violated the Massachusetts Rules of Domestic Relations Procedure" (*id*. at ¶ 19).  A pretrial conference took place on June 9, 2015, and, according to Plaintiff, after Judge Dacyczyn saw in Plaintiff's pretrial memorandum that Plaintiff was aware of the Standing Order violation, the Judge "*disappeared* for exactly four months" (*id*. at ¶ 20).

Judge Dacyczyn reappeared on October 5, 2015, for a hearing on a motion filed by defendant Hollister to find Plaintiff in contempt of the Order (*id*.).  The Judge, however, was "not interested" in the Standing Order violation, and Plaintiff told the Judge that he "didn't feel

---

2012) (dismissing the *pro se* plaintiffs' minor children as party plaintiffs in a § 1983 case because the parents were not permitted to represent their children).

comfortable" with the Judge, that he "felt as though [the Judge] had already violated Plaintiff's

Constitutional Rights," and "that [he] would be challenging [the Judge's] every action first at the

SJC single Justice Appeal session at Suffolk County and then in Federal District Court" (*id*. at ¶

31-1).  Thereafter, Judge Dacyczyn intentionally delayed docketing an order in which he found

Plaintiff in contempt of the Order, for the specific purpose of preventing Plaintiff from filing a

timely interlocutory appeal with the SJC (*id*. at ¶ 31-1).

Plaintiff alleges that on November 5, 2015, he attempted to file an *ex parte* emergency

motion seeking relief from the Order as a result of having sustained an injury to his knee.

Defendant Marinaro told Plaintiff that he did not consider Plaintiff's situation an emergency and

that Plaintiff should instead file a complaint for modification, which defendant Marinaro told

Plaintiff he would – and did – put before Judge Simmons, the judge sitting that day (*id*. at ¶ 35).

Judge Simmons advised Plaintiff that modification could only be granted on a final judgement,

and he refused to hear Plaintiff's *ex parte* emergency motion for relief from the Order (*id*.).

Plaintiff alleges that, thereafter, Judge Dacyczyn colluded with defendant Hollister to calculate a

new child support payment from Plaintiff to Ms. Powell of $115.00 per week commencing

December 4, 2015, based on fraudulent figures contained in a worksheet defendant Hollister

submitted to the Court, but failed to provide to Plaintiff (*id*. at ¶¶ 41-42).

Plaintiff alleges that, owing to Judge Dacyczyn's improper and unethical behavior, he

filed three motions for Judge Dacyczyn to recuse himself (*id*. at ¶¶ 32-2, 43, 46).  On November

24, 2015, Plaintiff filed a response to one of Judge Dacyczyn's orders denying his recusal, which

defendant Marinaro initially told Plaintiff he would not allow Plaintiff to file, but, after some

conversation, accepted (*id*. at ¶ 40).

Plaintiff alleges that he sought redress for the Standing Order violation outside of the

context of the divorce proceedings as well.  On August 21, 2015, Plaintiff filed a complaint

against defendant Hollister with the Board of Bar Overseers ("BBO") (*id*. at ¶ 25).  The day after

Plaintiff filed his complaint, defendant Kenneth W. Luke, Assistant Bar Counsel, called Plaintiff

and advised him that his complaint against defendant Hollister would not be docketed with the

Office of Bar Counsel ("OBC") because it was a procedural dispute (*id*. at ¶ 26).  Plaintiff told

defendant Luke that "he was full of shit" (*id*.).  On September 10, 2015, Plaintiff called

defendant Luke and asked that the OBC send him something in writing, but defendant Luke told

Plaintiff he would receive nothing (*id*.).  Nevertheless, on November 3, 2015, Plaintiff received

correspondence from defendant Luke stating that "the [J]udge had authority to shorten the time

stated in the [S]tanding [O]rder," and that Plaintiff's complaint would "not be investigated

further pursuant to Supreme Judicial Court Rule 4:01, sections 7(1) and 7(2)(a)" (*id*.)[7]

On the same day that Plaintiff filed his complaint against defendant Hollister with the

BBO, Plaintiff filed a complaint against Judge Dacyczyn with the Commission on Judicial

Conduct ("CJC") (*id*. at ¶ 25).  On September 1, 2015, defendant Kenneth V. Neff, III, Executive

Director of the CJC, responded in a similarly unsatisfactory fashion, so far as Plaintiff was

concerned (*id*. at ¶ 27).[8]  Plaintiff followed up his initial CJC complaint with additional

---

[7] Section 7(1) provides that the Bar Counsel "shall investigate all matters involving alleged misconduct by a lawyer coming to his or her attention from any source … provided that Bar Counsel need not entertain any allegation that Bar Counsel in his or her discretion determines to be frivolous, to fall outside the Board's jurisdiction, or to involve conduct that does not warrant further action[.]"  Section 7(2)(a) provides that the Bar Counsel "shall dispose of all matters involving alleged misconduct by a lawyer in accordance with this rule and any rules and regulations issued by the Board for his or her guidance which may provide … that Bar Counsel need not pursue or may close a complaint whenever the matter complained of is frivolous, falls outside the jurisdiction of the Board, or involves allegations of misconduct that do not warrant further action[.]"

[8] Plaintiff does not set out the CJC's response in his complaint, but he characterizes defendants Neff and Luke as both "forsak[ing] their agencies [sic] mission statements, which is to protect the public from dishonest and corrupt Judges and Lawyers" (*id*. at ¶ 27).

correspondence to defendant Neff on October 7, 2015, which he copied to the Massachusetts

Attorney General, the United States Department of Justice, and several news agencies (*id*. at ¶

32-1).

Finally, Plaintiff alleges that, on or about July 21, 2015, he retained defendant Timothy

Shugrue to represent him in the divorce proceedings (*id*. at ¶ 28).  Plaintiff paid defendant

Shugrue an initial retainer of $2,500, and later, an additional $500 (*id*.).  By September 21, 2015,

Plaintiff had determined that defendant Shugrue "only had making money on his mind," and he

sent defendant Shugrue a letter requesting the return of the $3,000 Plaintiff had paid him (*id*. at ¶

28).  In the letter, Plaintiff advised defendant Shugrue that he had "done absolutely nothing to

remedy [Plaintiff's] situation," that "he had deliberately not represented [Plaintiff] competently

and … intentionally failed to do [his] job to the best of [his] ability and expose the intentional

wrongdoing on the part of Attorney Hollister and [the] Judge … with regards to the unlawful

April 6, 2015 hearing" (*id*. at ¶ 28).

    B.  Causes of Action

Plaintiff asserts five counts against all eight defendants, all of whom he purports to name

in their individual and official capacities.  Three of the counts state federal causes of action.  In

Count One, Plaintiff states a claim for conspiracy to violate 42 U.S.C. § 1983.  In Count Three,

Plaintiff states a general claim under the Due Process and Equal Protection Clauses of the

Fourteenth Amendment.  In Count Four, Plaintiff states a claim for conspiracy to violate 42

U.S.C. § 1985(2).  Plaintiff's two state law causes of action consist of a tort claim for intentional

infliction of emotional distress in Count Two and a claim for violation of the Massachusetts Civil

Rights Act ("MCRA"), M.G.L. ch. 12, §§ 11H, I, in Count Five.

### III.    Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim." *Guerra-Delgado v. Popular, Inc*., 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), ""accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id*. (citing *Tasker v. DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  To assess whether a complaint meets this standard, courts employ a two-step approach.  *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  *A.G. ex. rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted).  Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where and why," and "courts should … 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'"  *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).  "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), but even a *pro se* complaint should be dismissed if "a lenient construction demonstrates

beyond doubt that the plaintiff can prove no set of facts to support her claim for relief," *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 260 (1st Cir. 1994).

## IV.    Discussion

### A.  Plaintiff's Claims Under Federal Law

#### 1.   Fourteenth Amendment Claim Against All Defendants

Count Three of Plaintiff's complaint asserts a direct claim against all of the defendants under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.  It is readily disposed of because "'there is no direct cause of action under the Fourteenth Amendment, and § 1983 must be employed to bring such a claim.'"  *Lozana v. Suffolk Sup. Ct.*, No. 14-13123-FDS, 2015 WL 5684071, at *4 (D. Mass. Sept. 28, 2015) (quoting *Schomburg v. Johnson*, No. 08-11361-GAO, 2009 WL 799466, at *2 (D. Mass. Mar. 25, 2009)).  Accordingly, Count Three of Plaintiff's complaint should be dismissed as to all defendants.

#### 2.   42 U.S.C. §§ 1983 and 1985(2) Claims – Immunity Defenses

##### (a)  *Official-Capacity Claims Against Defendants Patella, Marinaro, McCormack, Ferris, Luke, and Neff - Eleventh Amendment Immunity*

Counts One and Four of Plaintiff's complaint assert official-capacity claims for violations of 42 U.S.C. §§ 1983 and 1985(2) against defendants Patella, Marinaro, McCormack, Ferris, Luke, and Neff.  These defendants argue that Plaintiff's official-capacity claims against them are barred by the Eleventh Amendment.

Under the Eleventh Amendment, "[a] suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity."  *Fla. Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982) (citing *Ala. v. Pugh*, 438 U.S. 781, 781 (1978)).  *See also Ky. v. Graham*, 473 U.S. 159,

169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").  "'Although "[a] State may waive its sovereign immunity by consenting to be sued in federal court,' *Maysonet-Robels v. Cabrero*, 323 F.3d 43, 49 (1st Cir. 2003), such waivers must be unequivocal." *Dicenzo v. Mass. Probate & Family Ct.*, No. 15-cv-30171-MAP, 2015 WL 9690895, at *4 (D. Mass. Nov. 19, 2015) (citing *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)).  "The Supreme Court has made it clear that section 1983 does not abrogate a state's Eleventh Amendment immunity," and the "same analysis applies to section 1985." *Santiago v. Keyes*, 839 F. Supp. 2d 421, 427 (D. Mass. 2012) (citing *Quern v. Jordan*, 440 U.S. 332, 341-42 (1979); *Thomas v. Salem State Univ. Found.*, Civ. Action No. 11-10748-DJC, 2011 WL 5007973, at *8 (D. Mass. Oct. 8 2011); *Orria-Medina v. Metro. Bus. Auth.*, 565 F. Supp. 2d 285, 303 (D.P.R. 2007)).

"Official capacity" suits "'represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Graham*, 473 U.S. at 166 (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).  They are, "in all respects other than name, to be treated as a suit against the entity."  *Id*.  *See also Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013).  Thus, the Eleventh Amendment bar to damages actions against States in federal court "remains in effect when State officials are sued for damages in their official capacity."  *Graham*, 473 U.S. at 169 (citing *Cory v. White*, 457 U.S. 85, 90 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

Here, Plaintiff names defendants McCormack, Marinaro, Ferris, and Patella in their official capacities as the Court's Judicial Case Manager, Registrar, Assistant Registrar, and Operations Supervisor, respectively (Dkt. No. 50 at ¶¶ 4-6, 9).  "[T]he Courts of the

Commonwealth …, as instrumentalities of the State, are not subject to suit under § 1983 [or §

1985] , in light of their sovereign immunity grounded in the Eleventh Amendment." *Dicenzo*,

2015 WL 9690895, at *3 (citing *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002)).  *See also*

*Lewis v. W. Roxbury Dist. Court*, Civ. Action No. 12-11544-JLT, 2013 WL 4854117, at *5 (D.

Mass. Sept. 10, 2013) ("Federal courts have routinely found that state courts are arms of the state

for purposes of the Eleventh Amendment." (citing *Simmons v. Sacramento Cty. Super. Ct.*, 318

F.3d 1156, 1161 (9th Cir. 2003); *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 731-

32 (7th Cir. 1994))).  Because "'[t]he Commonwealth has not consented to being sued for money

damages in either the federal courts or in its own courts under § 1983' [or § 1985]," *Cryer v.*

*Mass. Dept. of Corr.*, 763 F. Supp. 2d 237, 249 (D. Mass. 2011) (quoting *Hudson v. Maloney*,

326 F. Supp. 2d 206, 213 (D. Mass. 2004) (further citation omitted)), Plaintiff's official-capacity

claims against McCormack, Marinaro, Ferris, and Patella are barred by the Eleventh

Amendment.

Plaintiff has named defendant Luke in his capacity as Assistant Bar Counsel (Dkt. No. 50

at ¶ 3).  "The Board of Bar Overseers and the Office of Bar Counsel are both entities created by

court rule to support the operation of the Courts of Massachusetts through the regulation of the

Bar.  As such, they are arms of the state, subject to the Eleventh Amendment bar against suits for

money damages in federal court." *Johnson v. Bd. of Bar Overseers of Mass.*, 324 F. Supp. 2d

276, 286 (D. Mass. 2004) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

(1984)).  Accordingly, Plaintiff's official-capacity claim against defendant Luke is barred by the

Eleventh Amendment.

Finally, Plaintiff has named defendant Neff in his capacity as the Executive Director of

the CJC.  Massachusetts established the CJC by statute in 1978 and delegated to it "the authority

to receive information, investigate, conduct hearings, and make recommendations to the supreme

judicial court concerning allegations of judicial misconduct and allegations of mental or physical

disability affecting a judge's performance."  M.G.L. ch. 211C, § 2.  As a state agency, the CJC is

immune from suit under § 1983.  *Dicenzo*, 2015 WL 9690895, at *3.  Accordingly, Plaintiff's

official-capacity claim against defendant Neff is barred by the Eleventh Amendment as well.

Accordingly, Plaintiff's official-capacity claims for damages against defendants Patella,

Marinaro, McCormack, Ferris, Luke, and Neff pursuant to §§ 1983 and 1985(2) in Counts One

and Four of Plaintiff's complaint should be dismissed.

(b) *Individual-Capacity Claims Against Defendants Patella and Marinaro*
*– Quasi-Judicial Immunity*

Plaintiff also asserts individual-capacity claims against defendants Patella and Marinaro

for violations of 42 U.S.C. §§ 1983 and 1985(2).  Patella and Marinaro argue that they are

absolutely immune from any liability for damages pursuant to the doctrine of quasi-judicial

immunity.

"Courts must look to federal law in appraising the viability of immunity defenses in

section 1983 [and section 1985] actions."  *Goldstein*, 719 F.3d at 24 (citing *Wang v. N.H. Bd. of*

*Regist. in Med.*, 55 F.3d 698, 701 (1st Cir. 1995)).  "[A] motion to dismiss on the grounds that

the acts complained of were privileged will only succeed when the entitlement to the privilege is

demonstrated by the complaint itself, taking all allegations of the complaint as true and drawing

all reasonable inferences in favor of the plaintiffs."  *Meltzer v. Grant*, 193 F. Supp. 2d 373, 381

(D. Mass. 2002).

"There is no question that [judges are] protected by absolute immunity from civil liability

for any normal and routine judicial act."  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (quoting

*Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).  "This immunity applies no matter how

erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Cok*, 876 F.2d at 2 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). *See also Nystedt v. Nigro*, 700 F.3d 25, 32 (1st Cir. 2012) ([A]bsolute judicial immunity is ineffaceable even in the presence of 'grave procedural errors.'" (quoting *Stump*, 435 U.S. at 359)).

Certain "non-judicial persons fulfilling quasi-judicial functions" share in the court's immunity. *Cok*, 876 F.2d at 3. *See also Sullivan v. Kelleher*, 405 F.2d 486, 487 (1st Cir. 1968) ("[T]he immunity accorded to judges 'extends to other officers of government whose duties are related to the judicial process.'" (quoting *Barr v. Mateo*, 360 U.S. 564, 569 (1959))). "The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." *Nystedt*, 700 F.3d at 30 (citing *Cleavinger*, 474 U.S. at 200; *Coggeshall v. Mass. Bd. of Regis. of Psychologists*, 604 F.3d 658, 662-63 (1st Cir. 2010); *LaLonde v. Eissner*, 539 N.E.2d 538, 540-41 (Mass. 1989)). Thus, the First Circuit has extended absolute immunity to court clerks, *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) (extending judicial immunity to a clerk who filled out commitment papers based on the official directives of the judge); *Slotnick v. Staviskey*, 560 F.2d 31, 32 (1st Cir. 1977) ("[T]he state court judge enjoys absolute immunity from suit under § 1983 … as does his clerk …."); a court appointed guardian ad-litem and conservator in divorce proceedings who "functioned as agents of the court … for those activities integrally related to the judicial process," *Cok*, 876 F.2d at 3 (citing *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)); and a state receiver who carried out the orders of an appointing judge, *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). "Conversely, absolute immunity would fail to attach only when such persons perform acts which are clearly outside the scope of

their jurisdiction." *Cok*, 876 F.2d at 3 (citations omitted).  "[A]llegations of malice, or bad faith or a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders." *Id.*  "This immunity makes perfect sense; in its absence, [quasi-judicial officials] would become 'lightning rod[s] for harassing litigation aimed at judicial orders.'"  *Nystedt*, 700 F.3d at 31 (quoting *Kermit Constr. Corp.*, 547 F.2d at 3).

Viewing Plaintiff's factual allegations in the light most favorable to him and drawing all reasonable inferences in his favor, the court concludes that defendants Patella and Marinaro were "function[ing] as agents of the court" with respect to "activities integrally related to the judicial process," and, thus, are entitled to absolute quasi-judicial immunity.  *Cok*, 876 F.2d at 3. Plaintiff's only factual allegation against defendant Patella is that, on November 9, 2015, he allowed defendant Hollister to file a motion to expedite a contempt complaint against Plaintiff with a back-dated certificate of service (Dkt. No. 50 at ¶ 36).  Plaintiff's factual allegations against defendant Marinaro are that, on December 2, 2014, he "approved" Ms. Powell's affidavit of indigency (*id.* at ¶ 11); on November 5, 2015, he told Plaintiff that he did not consider Plaintiff's situation an emergency and that Plaintiff should file a complaint for modification instead of an *ex parte* emergency motion, which he told Plaintiff he would – and did – put before Judge Simmons that day (*id.* at ¶ 35); and, on November 24, 2015, he initially told Plaintiff he would not allow Plaintiff to file a response to an order of Judge Dacyczyn not recusing himself, but then accepted the response for filing (*id.* at ¶ 40).  Thus, Plaintiff seeks to hold defendants Patella and Marinaro liable for accepting documents for filing and communicating with parties to litigation about the litigation, both of which are core clerical functions.  Several sessions of this court have held that quasi-judicial immunity attaches to clerk's office personnel performing such duties even in the face of allegations of malfeasance, such as Plaintiff makes here.  *See McNeil v.*

*Mass.*, No. 14-14370-DJC, 2014 WL 7404561, at *3-4 (D. Mass. Dec. 30, 2014) (dismissing the plaintiff's § 1983 claims against court clerks and supervisors who allegedly denied her requests for forms and to file motions because the complaint failed to overcome the protection of quasi-judicial immunity); *Lewis*, 2013 WL 4854117, at *6 (dismissing the plaintiff's § 1983 claim against the court clerk for allegedly failing to record his case history accurately and ignoring his request to obtain documents on quasi-judicial immunity grounds because the plaintiff was seeking "to hold the Court Clerk liable for improperly discharging her duties, which arose "directly from [her] role in supporting the adjudication of cases," and were "inextricably intertwined with the judicial function"); *Andre v. Moriarty*, No. 11-40009-FDS, 2011 WL 1456773, at *7 (D. Mass. Apr. 4, 2011) (dismissing fraud and mail tampering claims against the clerk of court and various court personnel on quasi-judicial immunity grounds where the complaint failed to "set forth factual underpinnings … that would set forth plausible claims that they were not performing integral judicial tasks").  Because the alleged actions of defendants Patella and Marinaro involve the discharge of core clerical duties in support of the adjudication of cases, they are "inextricably intertwined with the judicial function," and quasi-judicial immunity attaches.  *Nystedt*, 700 F.3d at 30.

Accordingly, this court recommends that Plaintiff's individual-capacity §§ 1983 and 1985(3) claims against defendants Patella and Marinaro in Counts One and Four of his complaint be dismissed.

(c) *Individual Capacity Claims Against Defendant Luke – Absolute Immunity*

Plaintiff asserts individual-capacity claims against defendant Luke for violation of 42 U.S.C. §§ 1983 and 1985(2).  Defendant Luke argues that he is entitled to absolute immunity from the claims.

16

For support, defendant Luke relies on *Johnson v. Board of Bar Overseers of Massachusetts*, 877 N.E.2d 279, *1 (Mass. App. Ct. 2007) (unpublished disposition), in which the Massachusetts Appeals Court dismissed state law tort claims for defamation and interference with contractual relations brought by a Massachusetts attorney against the BBO, the OBC, bar counsel, and assistant bar counsel.  The court reasoned that the Supreme Judicial Court has "inherent authority and control over bar admission, bar membership, and bar discipline," and delegated to the BBO and the OBC "the initial tasks of screening complaints, investigating and finding facts, and making recommendations regarding bar discipline."  *Id*. at *1.  Thus, "[a]s arms of the Supreme Judicial Court, the BBO, the OBC, and bar counsel are clothed with the immunity of the court for their official actions and public statements in pursuit of their official acts."  *Id*.

This court is required to look to federal rather than state law to determine defendant Luke's immunity to Plaintiff's §§ 1983 and 1985 claims.  *Goldstein*, 719 F.3d at 24.  He is entitled to immunity on the basis of an earlier case brought by the same plaintiff in federal court.  *See Johnson*, 324 F. Supp. 2d at 279-280.  In the federal proceeding, the plaintiff brought §§ 1983 and 1985 claims against the BBO, OBC, and bar counsel, alleging that the BBO's administrative proceedings brought on the basis of the OBC's disciplinary charges were conducted unfairly and unlawfully.  The court held that bar counsel was entitled to absolute immunity:

> As Bar Counsel, [the defendant] "prosecute[s] all disciplinary proceedings before hearing committees, special hearing officer[s], the Board [of Bar Overseers], and [the Supreme Judicial Court]." Like adjudicators, prosecutors enjoy absolute immunity against damages actions under Section 1983 for activities in their quasi-judicial capacity, *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976), and "[s]tate officials performing prosecutorial functions – including their decisions to initiate administrative proceedings

> aimed at legal sanctions – are entitled to absolute immunity as
> well," *Wang*, 55 F.3d at 701.

*Id*. at 287 (alterations in original).

In this case, Plaintiff alleges that Defendant Luke failed to docket or further investigate Plaintiff's complaint against defendant Hollister.  As bar counsel, defendant Luke is entitled to absolute immunity for his decisions relating to whether or not to initiate administrative proceedings.  *Id*.

Accordingly, this court recommends that Plaintiff's individual-capacity §§ 1983 and 1985(2) claims against defendant Luke in Counts One and Four of his complaint be dismissed.

### 3.   42 U.S.C. § 1983 – Failure to State a Claim

"A civil rights conspiracy [under § 1983] as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988) (internal quotation marks omitted) (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (7th Cir. 1979), *rev'd in part on other grounds,* 446 U.S. 754 (1980)).  A plaintiff need not show an express agreement in order to state a claim for conspiracy. "[A]greement between the conspirators – the glue of the conspiracy – can be inferred from all of the factual circumstances alleged." *Charles v. City of Boston*, 365 F. Supp. 2d 82, 90 (D. Mass. 2005) (citing *United States v. Tormos-Vega*, 959 F.2d 1103, 1117 (1st Cir. 1992); *Earle*, 850 F.2d at 843)).  "[F]or a conspiracy to be actionable under section 1983 the plaintiff has to prove … ' … besides the agreement, an actual deprivation of a right secured by the Constitution and laws.'" *Earle*, 850 F.2d at 844 (second alteration in original) (quoting *Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir. 1980)).

Plaintiff's complaint is replete with bald allegations of conspiracy, but is devoid of specific factual allegations, which, if true, would support an inference that the Judge and the defendants conspired with one another to deprive Plaintiff of his purported constitutional right to ten days to respond to the Motion.[9]  While "*pro se* complaints are to be read generously, allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements." *Garfinkle*, 632 F.2d at 165-66 (internal citation omitted) (citing *Staviskey*, 560 F.2d at 33).  The actions Plaintiff attributes to defendants Hollister, Patella, and Marinaro, and Judge Dacyczyn are routine occurrences in courthouses.[10]  Attorneys file motions, court personnel docket motions, and judges hear and decide motions.  It would be unreasonable to infer that an attorney for an opposing party, a judge, and court personnel were conspiring to violate a party's constitutional rights simply because the attorney filed a motion containing a contested representation, the clerk's office accepted the motion for docketing, and the judge

---

[9] For example, Plaintiff alleges that: "Defendant Hollister, … [and] Judge David Dacyczyn's behavior along with the deliberate and unlawful assistance of Defendant's [sic] McCormack, Marinaro, Ferris and Patela [sic] which certainly appear to have been deliberate, unethical and unlawful, was a concerted effort on the part of the five of them to violate the Plaintiff's Constitutional Rights" (Dkt. No. 50 at ¶ 14); "It appears as though [the Judge], Defendant Hollister and the Berkshire Probate Court Clerk's Office, Defendant's [sic] McCormack, Marinaro, Ferris and Patela [sic] are a tag team working together to deny the Plaintiff 'Due Process' and 'Equal Protection of the Law'" (*id*. at ¶ 45); and "The employees of the Commonwealth of Massachusetts and the Officers of the Court have pursued, or joined in the pursuit of, [sic] a common course of conduct, and acted in concert with and conspired with one another, in furtherance of a common plan or design to retaliate against Plaintiff and ultimately deny the Plaintiff equal protection of the law and also interfere with the due course of justice" (Dkt. No. 50 at ¶ 47).  Plaintiff's opposition to defendant Hollister's motion to dismiss continues with the conclusory allegations of conspiracy, including that "[t]here would logically be no other reason for the Defendants to all go along with Defendant Hollister's unlawful overt acts," and the defendants engaged in "overwhelming parallel conduct" (Dkt. No. 29 at p. 1).
[10] While Judge Dacyczyn is no longer a defendant in the case, Plaintiff still maintains that he was part of the alleged conspiracy.

decided the motion in the opposing party's favor.  That is precisely what Plaintiff asks this court

to do, and the court recommends that the invitation be declined.

Plaintiff's allegations as to the other defendants fare no better.  Plaintiff alleges that

defendants Luke and Neff failed to pursue administrative disciplinary proceedings against

defendant Hollister and Judge Dacyczyn, respectively.  Plaintiff alleges that defendant Shugrue

failed to meet Plaintiff's expectations as his lawyer to remedy the perceived procedural error and

instead was interested only in making money.  These allegations fail to provide a reasonable

basis for inferring that any of these defendants joined the alleged conspiracy.  Indeed, by the time

Plaintiff brought defendants Luke, Neff, and Shugrue onto the scene in July and August 2015,

the alleged end of the conspiracy – to deprive Plaintiff of his ten-day response time to the Motion

– had already been accomplished several months before.  As to defendants Lisa M. McCormack,

Judicial Case Manager for the Court, and defendant Clement A. Ferris, Assistant Register,

Plaintiff includes no factual allegations whatsoever, let alone any sufficient to tie them to the

alleged conspiracy (*id*. at ¶¶ 4-6, 9).  While Plaintiff does not have to show an express agreement

to state a § 1983 conspiracy claim, he does have to allege factual circumstances from which a

conspiracy can reasonably be inferred, and this he falls far short of doing.  *See Charles*, 365 F.

Supp. 2d at 90.

Plaintiff also fails to show a deprivation of a constitutional right.  Here, Plaintiff's

asserted constitutional right is to a ten-day response time with respect to the Motion.  Even if

Plaintiff should have had ten days to respond to the Motion as a matter of procedure pursuant to

the Standing Order – a proposition which is far from clear, but which this court need not resolve

– it does not follow that he had a federal constitutional right to it.  "The simple fact that state law

prescribes certain procedures does not mean that the procedures thereby acquire federal

constitutional dimension." *Staviskey*, 560 F.2d at 34 (string citation omitted) (holding that alleged procedural defects in a state court collection suit did not violate due process).   Nor, as it relates to Plaintiff's due process claim, has Plaintiff explained how the post-deprivation process afforded to him by the Massachusetts state court system could be considered constitutionally inadequate.  *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.").

Plaintiff also alleges an equal protection violation.  "The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government." *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004) (citing *Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001)).  In order to state an equal protection claim, a plaintiff must allege that, "'compared with others similarly situated, [he] was selectively treated … based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Id*. (citing *Barrington Cove*, 246 F.3d at 7).  The closest Plaintiff comes to alleging selective treatment is the allegation that "Judge Dacyczyn is quite selective in how he enforces the Massachusetts Rules of Domestic Relations Procedures," in relation to Judge Dacyczyn's refusal on May 4, 2015 to hear Plaintiff's motion for temporary orders because it was not in compliance with the Standing Order only one month after the Judge had heard and granted defendant Hollister's Motion despite its asserted lack of compliance with the Standing Order (Dkt. No. 50 at ¶ 19).  Thus, Plaintiff is alleging that he was treated dissimilarly to defendant Hollister vis-à-vis the Standing Order.  Plaintiff characterizes the dissimilar treatment as "retaliation for Plaintiff's objections, complaints and speech about violations of the

Massachusetts Rules of Domestic Relations Procedures by the Defendants at the Berkshire

Probate Court" (*id.* at ¶ 49).  But even if these facts could suffice to state an equal protection

claim, Plaintiff's complaint cannot support such an inference.  According to Plaintiff's

complaint, the first time he complained about the procedural violation was when he filed his

pretrial conference memorandum on June 2, 2015.  This was after the alleged dissimilar

treatment took place on April 6, 2015 and May 4, 2015.  It is logically impossible to infer that

the reason Plaintiff was treated differently on April 6, 2015, than defendant Hollister was treated

May 4, 2015, was because of complaints Plaintiff made about the dissimilar treatment beginning

on June 2, 2015.  Thus, Plaintiff's complaint fails to state a claim as to both prongs of a § 1983

conspiracy claim.

Individual § 1983 claims against the defendants would fare no better.  "'Section 1983

supplies a private right of action against a person who, under color of state law, deprives another

of rights secured by the Constitution or by federal law.'"[11]  *Santiago v. Puerto Rico*, 655 F.3d 61,

68 (1st Cir. 2011) (quoting *Redondo-Borges v. U.S. Dep't of HUD*, 421 F.3d 1, 7 (1st Cir.

2005)).  "A claim under § 1983 has two 'essential elements': the defendant must have acted

under color of state law, and his or her conduct must have deprived the plaintiff of rights secured

by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008)

(citing *Rodríguez–Cirilo v. García,* 115 F.3d 50, 52 (1st Cir.1997)).  "If the plaintiff fails to

allege facts sufficient to establish either the deprivation of a federal right or that the defendant or

---

[11] Specifically, § 1983 provides that "[e]very person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States … to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding for redress …." 42 U.S.C. § 1983.

defendants acted under color of state law, then the § 1983 claim is subject to dismissal." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005).

As set forth in connection with Plaintiff's conspiracy claim, Plaintiff has not sufficiently alleged a deprivation of a constitutional right.  As to defendants Hollister and Shugrue, Plaintiff additionally cannot demonstrate state action.  Both defendants Hollister and Shugrue were lawyers representing private parties in state court divorce proceedings.  It is well established that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."  *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981).  *See also Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986); *Thibeault*, 2012 WL 1865834 at *3 ("[C]ourts have universally held that attorneys, whether appointed or retained, are not acting under color of law for purposes of § 1983 liability." (string citation omitted)).  Private individuals may act "under color of state law" for purposes of § 1983 if it is shown that they conspired with state actors to deprive a plaintiff of his or her rights.  *Kermit Constr. Corp.*, 547 F.2d at 3 ("Although not themselves state officials, the complaint charges that they conspired with the [state official], and this is action 'under color' of state law. (citing *United States v. Price*, 383 U.S. 787, 794 (1966))).  However, while Plaintiff has alleged defendants Hollister and Shugrue conspired with the defendant state officials, his allegations are wholly conclusory and cannot satisfy the requirement of alleging state action as to these two defendants.

For these reasons, Plaintiff's § 1983 claim against all of the defendants in their individual

capacities, as well as against Defendant's Hollister and Shugrue in their "official capacities," in

Count One of his complaint should be dismissed.

### 4.   42 U.S.C. § 1985(2) – Failure to State a Claim

The second clause of Section 1985(2) creates a cause of action where "two or more

persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any

manner, the due course of justice in any State or Territory, with intent to deny to any citizen the

equal protection of the laws …."[12]  42 U.S.C. § 1985(2).  "There are thus four elements of a §

1985(2) claim: (1) a conspiracy between two or more persons, (2) to impede, hinder, obstruct, or

defeat, in any manner, the due course of justice in any State, (3) with invidiously discriminatory

animus, (4) which results in injury to plaintiff." *Bolduc v. Town of Webster*, 629 F. Supp. 2d

132, 150-51 (D. Mass. 2009) (citing *Greco v. Fitzpatrick*, 59 F.3d 164, *1 (1st Cir. 1995)

(unpublished disposition)).  A plaintiff may recover "only when the conspiratorial conduct of

which he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously

discriminatory animus.'" *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citing *Griffin v.

Breckenridge*, 403 U.S. 88, 102 (1971)).  Thus, Plaintiff "must allege facts showing that (1) the

defendants conspired against [him] because of [his] membership in a class, and (2) the criteria

---

[12] "The first part of § 1985(2) … is addressed to conspiracies to interfere with parties, jurors, or
witnesses in proceedings in federal courts." *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975).
Plaintiff makes no allegation of injury stemming from a conspiracy to interfere with federal
proceedings, hence the court limits its analysis of Plaintiff's claim to the first part of § 1985(2)
dealing with the administration of state courts.

defining the class are invidious." *Id*. at 4.  Plaintiff's complaint does not satisfy these requirements.

As discussed above in connection with Plaintiff's § 1983 conspiracy claim, Plaintiff fails to allege sufficient facts to support an inference of a conspiracy.  Furthermore, Plaintiff fails to allege that he has been discriminated against because of his membership in a class.  Plaintiff alleges that he is black and Native American (Dkt. No. 50 at ¶ 1), but he does not allege that he has suffered class-based discrimination as a result.  To the contrary, Plaintiff alleges that the defendants conspired to violate his civil rights "in retaliation for [P]laintiff's objections, complaints and speech about violations of the Massachusetts Rules of Domestic Relations Procedures by the Defendants …" (*id*. at ¶ 61).  This is insufficient to create a cognizable class for purposes of a § 1985(3) claim.  *See Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 179 (D. Mass. 2013) (holding that the plaintiff failed to allege a cognizable class to support his § 1985(3) claim where he alleged that he was suspended due to his opposition to the fire department chief's bid to remain chief for one year over the age of mandatory retirement).

Accordingly, Plaintiff's § 1985(2) claim against all of the defendants in any capacity in Count Four of his complaint should be dismissed

B.  Plaintiff's State Law Claims

1.  Decision re Supplemental Jurisdiction

The termination of Plaintiff's federal claims sets the stage for the court's exercise of informed discretion to decline to adjudicate the lingering state law claims for intentional infliction of emotional distress (IIED) and violation of the MCRA in Counts Two and Five of Plaintiff's complaint, respectively.  *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996) (citing 28 U.S.C. § 1367(c)(3)) (authorizing a district court to decline

adjudication of lingering state-law claims after it has dismissed "all claims over which it has original jurisdiction").  "No categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness."  *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citing *Roche,* 81 F.3d at 257; *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "'[I]n the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Id.* (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n. 7).  In this case, if the federal-law claims are dismissed at the motion to dismiss stage as this court recommends, all of the factors would weigh in favor of the court's declination of continuing jurisdiction.  *See, e.g., Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (citing *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995)) (observing that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation").

Thus, the undersigned recommends that the court decline to exercise supplemental jurisdiction over Plaintiff's remaining claims for IIED and violation of the MCRA.  However, the undersigned proceeds to analyze the state-law claims in the event the court decides to exercise supplemental jurisdiction.

> 2.  Immunity Defenses

>> a.  *Plaintiff's Official-Capacity MCRA Claims Against Defendants Patella, Marinaro, McCormack, Ferris, Luke, and Neff - Eleventh Amendment Immunity*

Count Five of Plaintiff's complaint asserts official-capacity claims for violation of the MCRA, M.G.L. ch. 12, §§ 11H and 11I, against defendants Patella, Marinaro, McCormack,

Ferris, Luke, and Neff.  These defendants argue that Plaintiff's official-capacity state civil rights claims against them are barred by the Eleventh Amendment.  The court agrees.

"The Eleventh Amendment … bars suits in federal court against states and state officers alleging violations of state law, regardless of the form of relief sought."  *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 172-73 (D. Mass. 2013).  Moreover, Massachusetts state courts have held that "the Commonwealth [including its agencies] is not a 'person' for purposes of M.G.L. ch. 12, §§ 11H and 11I."  *Commonwealth v. ELM Med. Lab., Inc.*, 596 N.E.2d 376, 379 (Mass. App. Ct. 1992).  *See also Santiago*, 839 F. Supp. 2d at 428 (dismissing a plaintiff's MCRA claim against the State Police and an individual officer on the ground that the defendants were entitled to sovereign immunity, and the Commonwealth is not a "person" for purposes of the MCRA); *Howcroft v. Peabody*, 747 N.E.2d 729, 745 (Mass. App. Ct. 2001) (affirming summary judgement in favor of the individual defendant police officers in their official capacities because neither the Commonwealth, nor any of its political subdivisions are "persons" within the meaning of the MCRA).

Accordingly, Plaintiff's official-capacity MCRA claims against defendants Patella, Marinaro, McCormack, Ferris, Luke, and Neff in Count Five of his complaint are subject to dismissal.

> b.  *Plaintiff's IIED and MCRA Claims Against Defendant Hollister – Litigation Privilege*

Counts Two and Five of Plaintiff's complaint assert state law claims for IIED and violation of the MCRA against defendant Hollister.  She asserts that, under Massachusetts law, she is absolutely immune from all forms of civil liability arising from her statements and actions as a lawyer in the course of the divorce proceedings.

Defendant Hollister relies on *Doe v. Nutter, McClennen & Fish*, 668 N.E.2d 1329, 1332-33 (Mass. App. Ct. 1996), in which the Massachusetts Appeals Court affirmed the dismissal of the plaintiffs' claims against the defendant lawyer and his law firm for violation of the Massachusetts Consumer Protection Act, M.G.L. ch. 93A ("ch. 93A"), violation of the MCRA, invasion of privacy, and intentional infliction of emotional distress, brought in connection with the defendant lawyer's response to a ch. 93A demand letter. *Id*. at 1331-32.  The court held that dismissal was proper because an "absolute" privilege "attaches to statements made by an attorney 'in the institution or conduct of litigation or conferences and other communications preliminary to litigation.'"  *Id*. at 1332 (quoting *Sriberg v. Raymond*, 345 N.E.2d 882, 884 (Mass. 1976)).  When the challenged statements are made in the course of litigation which has already commenced, "the issue is whether the statements are 'pertinent' to the litigation, *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1994), or … if the statements have 'some relation to the proceeding.'"  *Meltzer*, 193 F. Supp. 2d at 378 (quoting Restatement (Second) of Torts, § 586 (1976)).  The privilege provides a "complete defense even if the offensive statements are uttered maliciously or in bad faith," *Doe*, 668 N.E.2d at 1332-33 (citing *Correllas v. Viveiros*, 572 N.E.2d 7, 11 (Mass. 1991); *Mulgrew v. City of Taunton*, 574 N.E.2d 389, 391-92 (Mass. 1991)), and "protects the maker from any civil liability based [on those statements]" *id*. (citing *Correllas*, 572 N.E.2d at 13; *Robert L. Sullivan, D.D.S., P.C. v. Birmingham*, 416 N.E.2d 528, 533-34 (Mass. App. Ct. 1981)).  If the privilege was limited to claims for defamation, it "would make the privilege valueless [because] an individual would then be subject to liability under a different theory." *Id*. at 1333 (citing *Correllas*, 572 N.E.2d at 13; *Robert L. Sullivan, D.D.S., P.C.*, 416 N.E.2d at 533-34).

This court agrees with defendant Hollister that the privilege is applicable to Plaintiff's state law claims for intentional infliction of emotional distress and violation of the MCRA. Plaintiff's allegations against defendant Hollister are that, during the course of her representation of Plaintiff's ex-wife in the divorce proceedings, she wrongfully back-dated the certificate of service on the Motion, made fabricated and fraudulent statements in the Motion and at least one other document, and improperly communicated *ex parte* with the Judge through her child support worksheet. All of defendant Hollister's alleged wrongful statements and actions pertained directly to the ongoing divorce matter. Thus, application of the privilege is appropriate and in line with the public policy underlying it of "permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Meltzer*, 193 F. Supp. 2d at 377 (quoting *Lucas v. Newton-Wellesley Hosp.*, No. Civ. A. 01-0635, 2001 WL 834618, at *2 (Mass. Super. Ct. July 20, 2001)).

Accordingly, defendant Hollister is entitled to dismissal of Plaintiff's claims for intentional infliction of emotional distress and violation of the MCRA based on the litigation privilege recognized in Massachusetts courts.

### c. *Plaintiff's IIED and MCRA Claims Against Defendant Luke – Absolute Immunity*

Counts Two and Five of Plaintiff's complaint assert state law claims for IIED and violation of the MCRA against defendant Luke. Defendant Luke asserts that, under Massachusetts law, he is absolutely immune.

As discussed above, in *Johnson v. Board of Bar Overseers of Massachusetts*, 877 N.E.2d at *1, the Massachusetts Appeals Court held that, "[a]s arms of the Supreme Judicial Court, the BBO, the OBC, and bar counsel are clothed with the immunity of the court for their official actions and public statements in pursuit of their official acts." *Id*. Indeed, "[t]he Supreme

Judicial Court has given expression to the immunity … by a rule that protects the BBO, bar

counsel, and their members and staff from suit for 'any conduct in the course of their official

duties.'" *Id.* at *1 (citing Mass. S.J.C. Rule 4:01, § 9(3)).  Defendant Luke's alleged actions in

declining to pursue Plaintiff's complaint against defendant Hollister and communicating that

decision to Plaintiff fall within the official job duties of bar counsel, including screening and

investigating complaints, as delegated by the SJC.

Accordingly, defendant Luke is absolutely immune under Massachusetts law and is

entitled to dismissal of Plaintiff's claims for intentional infliction of emotional distress and

violation of the MCRA.

### 3.  Failure to State a Claim

#### a.  *Intentional Infliction of Emotional Distress*

To prevail on a claim for intentional infliction of emotional distress, the plaintiff must

show (1) that the defendant intended to inflict emotional distress or knew or should have known

that emotional distress was the likely result; (2) that the conduct was "extreme and outrageous,"

"beyond all possible bounds of decency," and "utterly intolerable in a civilized community;" (3)

that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the

emotional distress sustained by the plaintiff was "severe" and of a nature that "that no reasonable

[person] could be expected to endure it." *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19

(Mass. 1976).  A claim does not lie where "'only bad manners and mere hurt feelings [were]

involved.'" *Agis,* 355 N.E.2d at 319 (quoting *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va.

1974)).  Where reasonable people could differ whether the conduct is "extreme and outrageous,"

there is an issue for the jury.  *Boyle v. Wenk*, 392 N.E.2d 1053, 1057 (Mass. 1979) (citing *Agis*,

355 N.E.2d at 319).

Plaintiff's complaint fails to allege any facts plausibly supporting an IIED claim against any of the defendants.  None of the factual allegations rise to the level of "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community."  As to defendants Hollister, Patella, and Marinaro, as observed previously, attorneys file motions and court personnel accept motions for docketing and communicate with parties as part of their roles in the litigation process.  None of the actions Plaintiff attributes to any of these defendants are outrageous.  Nor do defendants Luke's or Neff's decisions not to pursue investigations against defendant Hollister or the Judge, respectively, or their communications to Plaintiff as to those decisions, constitute intolerable behavior.  As to defendant Shugrue, Plaintiff alleges that he failed to meet Plaintiff's expectations in representing him and only had making money on his mind.  These vague allegations fail to meet the high standard for an IIED claim.  Finally, as to defendants McCormack and Ferris, Plaintiff makes no factual allegations whatsoever.  In sum, none of Plaintiff's allegations against any of the defendants set out conduct that reasonable people could find was extreme or outrageous.

Accordingly, Count Two of Plaintiff's complaint for the intentional infliction of emotional distress against all defendants should be dismissed for failure to state a claim.

### b. *Massachusetts Civil Rights Act Violation*

To state a claim for a violation of the MCRA, Mass. Gen. Laws ch. 12, §§ 11H and 11I, a plaintiff must allege that "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" *Bally v. Ne. Univ.*, 532 N.E.2d 49, 51-52 (Mass. 1989) (quoting Mass. Gen. Laws ch. 12, § 11H).  "The Supreme Judicial Court of Massachusetts has

interpreted the MCRA to be co-extensive with § 1983 except for two disparities: (1) the MCRA

does not require any state action (i.e. there is no 'under color of state law requirement), and (2) a

claim under the MCRA requires a violation by threats, intimidation, or coercion." *Kelley v.*

*LaForce*, 288 F.3d 1, 10 (1st Cir. 2002) (citing *Duca v. Martins*, 941 F. Supp. 1281, 1294 (D.

Mass. 1996); *Duarte v. Healy*, 537 N.E.2d 1230, 1232 (Mass. 1989)).

Plaintiff's complaint fails to state a MCRA claim.  As discussed above in connection with

the court's § 1983 analysis, Plaintiff has failed to allege the deprivation of a constitutional right.

In addition, Plaintiff has failed to allege conduct by any of the defendants that reasonably could

constitute threats, intimidation or coercion.  In the context of the MCRA,

> [a] "threat" is "the intentional exertion of pressure to make another
> fearful or apprehensive of injury or harm." *Planned Parenthood
> League of Mass., Inc. v. Blake*, 631 N.E.2d 985, 990 (Mass. 1994).
> "Intimidation" involves putting one "in fear for the purpose of
> compelling or deterring conduct. *Id*.  "Coercion" is the application
> of force "to constrain him to do against his will something he
> would not otherwise have done." *Id*. (quoting *Deas v. Dempsey*,
> 530 N.E.2d 1239, 1241 (Mass. 1988)).  Both threats and
> intimidation often rely on an element of actual or threatened
> physical force, *Ayasli v. Armstrong*, 780 N.E.2d 926, 936 (Mass.
> App. Ct. 2002), ….  However, [the Supreme Judicial Court] ha[s]
> held that coercion is a broader category that may rely on physical,
> moral, or economic coercion. *Haufler v. Zotos*, 845 N.E.2d 322,
> 335-36 (Mass. 2006); *Buster v. George W. Moore, Inc*., 783
> N.E.2d 399, 409-411 (Mass. 2003); *Planned Parenthood*; 631
> N.E.2d at 990.

*Kennie v. Nat. Res. Dep't*, 889 N.E.2d 936, 943-44 (Mass. 2008).  Whether a defendant's

conduct constitutes threats, intimidation, or coercion is evaluated under an objective reasonable

person standard. *Haufler*, 845 N.E.2d at 335.  *See also Meuser v. Fed. Express Corp*., 564 F.3d

507, 520 (1st Cir. 2009) ("'[T]he state of mind of the person threatened is not controlling,' it is

whether a reasonable person in [the plaintiff's] circumstance would feel threatened, intimidated

or coerced by [the defendant's] conduct." (first alteration in original) (quoting *Commonwealth v.*

*DeVincent*, 266 N.E.2d 314, 316 (Mass. 1971))).  Plaintiff's complaint contains no allegations, aside from the conclusory labels in the language of Count Five itself, that any of the defendants engaged in any conduct that could be characterized as "threats, intimidation, or coercion" (Dkt. No. 50 at ¶ 63).  There are no allegations that any of the defendants used or threatened to use physical force or coerced Plaintiff to do something against his will.

Accordingly, Count Five of Plaintiff's complaint for violation of the MCRA against all defendants should be dismissed for failure to state a claim.

V.     Conclusion

For these reasons, it is this court's RECOMMENDATION that the separate motions of the defendants P. Keyburn Hollister (Dkt. No. 17), Anthony Patella (Dkt. No. 31), Kenneth W. Luke and Francis B. Marinaro (Dkt. No. 64), Lisa M. McCormack, Clement A. Ferris, and Howard V. Neff, III (Dkt. No. 66), and Timothy J. Shugrue (Dkt. No. 74) to dismiss all five counts of *pro se* Plaintiff Walter J. Powell's operative complaint (Dkt. No. 50) be GRANTED.[13]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: September 20, 2016

---

[13] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.